UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| KIM CARLSON LEWIS, *et al.*, | * | CIVIL ACTION NO.: |
| Plaintiffs, | * | 1:26-cv-00172 |
| | * | |
| VERSUS | * | JUDGE DRELL |
| | * | |
| HARRIS COUNTY, TEXAS, *et al.,* | * | MAGISTRATE JUDGE PEREZ-MONTES |
| Defendants. | * | |
| ********************************** | * | **JURY TRIAL REQUESTED** |

**MEMORANDUM IN SUPPORT OF
RULE 12(b)(6) MOTION TO DISMISS
WILLIAM McCONNELL, CLAY McCONNELL,
JOHN STUCKEY, AND PAMELA HEARN, M.D.**

MAY IT PLEASE THE COURT:

Plaintiffs, Kim Carlson Lewis, as Personal Representative of Erik Carlson, deceased, and on her own behalf, and Lindsey Gratehouse, on behalf of her minor child M.G. ("Plaintiffs"), have filed suit against alleged "Supervisor Defendants," William McConnell, Clay McConnell, John Stuckey, and Pamela Hearn, M.D. (hereinafter "Supervisor Defendants"). Pursuant to Fed. R. Civ. P. 12(b)(6), and for the reasons set forth below, Supervisor Defendants respectfully request the Court to enter an order dismissing all Plaintiffs' claims brought against them, with prejudice.

## TABLE OF CONTENTS

**Page**

Background ............................................................................................................ 1

    I.    Factual background. ................................................................................. 1

    II.    Plaintiffs' claims against the Supervisor Defendants. ........................... 2

Law and Argument ............................................................................................... 3

    I.    Legal Standard. ....................................................................................... 3

    II.    Plaintiffs failed to sufficiently plead a plausible claim under 42 U.S.C. § 1983 ......................................................................................................... 4

    III.    Plaintiffs failed to state a plausible claim under state law. ................... 14

    IV.    Plaintiffs failed to plead sufficient facts to show William McConnell and Clay McConnell are personally liable. ................................................... 15

    V.    Plaintiffs' state law claims against Dr. Pamela Hearn are premature. ................... 18

Conclusion ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraugh v. Altimus*,
20-252, 2023 U.S. Dist. LEXIS 163953 (W.D. La. Sep. 14, 2023)........................................13

*Alvarado v. CITGO Petro. Corp.*,
No. 25-40455, 2026 U.S. App. LEXIS 6463 (5th Cir. Mar. 4, 2026) ......................................4

*Anderson v. Marshall Cty.*,
637 F. App'x 127 (5th Cir. 2016) ...........................................................................................12

*Armstrong v. Ashley*,
60 F.4th 262 (5th Cir. 2023) ...................................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................................3, 4

*Bell v. State Prison Offs.*,
No. 23-30339, 2024 U.S. App. LEXIS 13817 (5th Cir. June 6, 2024)......................................9

*Connick v. Thompson*,
563 U.S. 51 (2011)...................................................................................................................12

*Damond v. City of Rayville*,
127 F. 4th 935 (5th Cir. 2025) .................................................................................................14

*Fletcher v. Whittington*,
No. 18-1153, 2022 U.S. Dist. LEXIS 149366 (W.D. La. Aug. 19, 2022)...............................13

*Fletcher v. Whittington*,
No. 18-1153, 2022 U.S. Dist. LEXIS 151493 (W.D. La. Aug. 23, 2022)....................7, 14, 15

*Guidry v. La. Dep't of Pub. Safety*,
No. 24-30754, 2026 U.S. App. LEXIS 7242 (5th Cir. Mar. 11, 2026) .....................5, 8, 10, 11

*Estate of Henson v. Callahan*,
440 F. App'x 352 (5th Cir. 2011) .......................................................................................9, 11

*Hollowell v. Orleans Regional Hosp. LLC*,
217 F.3d 379 (5th Cir. 2000) ...................................................................................................16

*Johnson v. Harris County*,
83 F.4th 941 (5th Cir. 2023) ..................................................................................................3, 4

ii

*Jones v. Lumpkin*,
No. 23-40612, 2024 U.S. App. LEXIS 11015 (5th Cir. May 6, 2024)..................................6, 8

*Kentucky v. Graham*,
473 U.S. 159 (1985)......................................................................................................5

*Lentworth v. Potter*,
255 F. App'x 903 (5th Cir. 2007) ...................................................................................5

*Martinez v. City of N. Richland Hills*,
846 F. App'x 238 (5th Cir. 2021) .................................................................................13

*Martinez v. Harris County*,
No. 24-20194, 2025 U.S. App. LEXIS 7023 (5th Cir. Mar. 26, 2025) .................................12

*Martinez v. Nueces Cty.*,
71 F.4th 385 (5th Cir. 2023) ......................................................................................6, 7

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978)...........................................................................................2, 4, 5, 12

*Nunez v. Pinnacle Homes, L.L.C.*,
180 So. 3d 285 .........................................................................................................18

*Ogea v. Merritt*,
130 So. 3d 888 (La. 2013) ...........................................................................................17

*Peña v. City of Rio Grande City*,
879 F.3d 613 (5th Cir. 2018) .........................................................................................9

*Roberts v. Benoit*,
605 So. 2d 1032 (La. 1992) .........................................................................................15

*Roe v. Johnson Cnty., Tex.*,
3:18-2497, 2019 WL 5031357 (N.D. Tex. July 29, 2019).........................................................5

*Ruiz v. Brennan*,
851 F.3d 464 (5th Cir. 2017) ........................................................................................4

*Saenz v. City of El Paso*,
637 F. App'x 828 (5th Cir. 2016) ...................................................................................7

*Smith v. Prator*,
21-0620, 2022 U.S. Dist. LEXIS 179384 (W.D. La. Sep. 30, 2022)................................14, 15

*Soriano v. Gulf Coast Lift, LLC*,
No. 12-2744, 2014 U.S. Dist. LEXIS 31338 (E.D. La. Mar. 11, 2014) .................................16

*Thomas v. Wright*,
  No. 23-1614, 2025 LX 164561 (W.D. La. Mar. 27, 2025) ........................................................19

*Varnado v. Lynaugh*,
  920 F.2d 320 (5th Cir. 1991) ...................................................................................................10

*Williams v. Webre*,
  No. 24-847, 2024 U.S. Dist. LEXIS 136163 (E.D. La. Aug. 1, 2024) ..............................10, 19

*Williams v. Webre*,
  No. 24-847, 2024 U.S. Dist. LEXIS 141706 (E.D. La. Aug. 9, 2024) ....................................19

*Zavala v. City of Baton Rouge*,
  No. 17-656, 2018 U.S. Dist. LEXIS 160602 (M.D. La. Sep. 20, 2018) ..................................12

**Statutes**

42 U.S.C. § 1983 ................................................................................................................ *passim*

La. Stat. Ann. § 40:1231.1, *et seq.* ........................................................................................19, 20

La. Stat. Ann. § 12:1301(A) ........................................................................................................16

La. Stat. Ann. § 12:1320 ..................................................................................................16, 17, 18

Louisiana Civil Code article 2315 ...............................................................................................14

**Other Authorities**

Fed. R. Civ. Proc. 8 .......................................................................................................................4

Fed. R. Civ. Proc. 10 .....................................................................................................................3

Fed. R. Civ. Proc. 12 ..................................................................................................................3, 4

**BACKGROUND**

## I.     Factual background.

This is a civil rights lawsuit arising from the death of pretrial detainee Erik Carlson.[1] According to Plaintiffs' Complaint, Erik Carlson died from complications related to a peritonsillar abscess that was purportedly caused by a strep throat infection.[2] Plaintiffs have brought suit against the Supervisor Defendants alleging entitlement to damages, punitive damages, and attorney fees, costs, and interest for alleged violations of federal law, including 42 U.S.C. § 1983, and state law.[3]

Plaintiffs are:

(1)    Kim Carlson Lewis, the mother of Erik Carlson,[4] who brings this lawsuit as Personal Representative of Erik Carlson, and on her own behalf; and

(2)    Lindsey Gratehouse, the mother of Erik Carlson's minor child M.G.,[5] who brings this lawsuit on behalf of M.G.

Plaintiffs allege Erik Carlson was arrested on January 5, 2025, in Houston, Texas.[6] He was transferred to LaSalle Correctional Center in Olla, Louisiana on Friday, January 17, 2025.[7] At an unspecified time, Mr. Carlson allegedly started to feel sick with a sore throat.[8] This sickness purportedly progressed over the next few days and his condition continued to deteriorate.[9] Plaintiffs allege that Mr. Carlson filled out two sick call requests and was taken to be evaluated by the nurse at the Olla facility's clinic on January 24, 2025.[10] At that time, the clinic nurse called for Mr. Carlson to be taken to the emergency room at LaSalle General Hospital for further treatment

---

[1] Doc. 1, pp. 2-4.
[2] *Id.* at p. 12.
[3] *Id.* at pp. 24-26.
[4] *Id.* at p. 5.
[5] *Id.*
[6] *Id.* at p. 8.
[7] *Id.* at p. 9.
[8] *Id.*
[9] *Id.* at pp. 9-10.
[10] *Id.* at p. 11.

of his condition.[11] After initial treatment at LaSalle General Hospital, Mr. Carlson was scheduled to be transferred to another hospital to receive a higher level of care.[12] During his transfer by ambulance, Mr. Carlson suffered cardiac arrest and was declared deceased shortly after midnight on January 25, 2025.[13]

## II.    Plaintiffs' claims against the Supervisor Defendants.

Plaintiffs allege William and Clay McConnell are the owners of "LaSalle," John Stuckey is the Warden of LaSalle Correctional Center in Olla, Louisiana, and Dr. Pamela Hearn is the Medical Director for "LaSalle" and the Olla facility.[14] In their Complaint, Plaintiffs label William McConnell, Clay McConnell, John Stuckey, and Pamela Hearn, M.D. as "Supervisor Defendants."[15] It is on this basis that the Plaintiffs are asserting claims against these Defendants under "federal law, including 42 U.S.C. § 1983, and state law." [16] Plaintiffs allege that the Supervisor Defendants are liable in both their individual and official capacities.[17]

In their complaint, Plaintiffs' list four separate causes of action. Cause of Action I is brought against the "*Monell* Defendants," which includes all individual defendants in their official capacities.[18] Cause of Action II is brought against the "Supervisor Defendants."[19] Cause of Action III is brought for "Deliberate Indifference" and is not alleged against the Supervisor Defendants.[20] Cause of Action IV is brought against all defendants for "Wrongful Death."[21]

---

[11] Doc. 1, p. 12.
[12] *Id.*
[13] *Id.*
[14] *Id.* at p. 7.
[15] *Id.* at p. 24.
[16] *Id.* at p. 25.
[17] *Id.* at p. 1.
[18] *Id.* at p. 23.
[19] *Id.* at p. 24.
[20] *Id.* at p. 25.
[21] *Id.* at p. 26.

**LAW AND ARGUMENT**

Plaintiffs' Complaint lacks sufficient factual allegations to state a claim against the Supervisor Defendants upon which relief can be granted. Plaintiffs' § 1983 official capacity claims against the Supervisor Defendants should be dismissed as duplicative. Plaintiffs' § 1983 individual capacity claims lack sufficient factual support and consist of conclusory, speculative allegations that fail to state a plausible claim for relief under a theory of supervisor liability. Plaintiffs likewise fail to support their state law claims against the Supervisor Defendants with sufficient factual allegations.

Moreover, Plaintiffs failed to plead how William and Clay McConnell, as alleged owners of the LaSalle-branded entities, may be held personally liable for the alleged acts of those entities. Further, any state law claims sounding in medical malpractice alleged against Dr. Pamela Hearn are premature and should be dismissed pending submission of those claims to a medical review panel. Finally, pursuant to Fed. R. Civ. Proc. 10(c), the Supervisor Defendants incorporate by reference the arguments raised in the "Rule 12(b)(6) Motion to Dismiss Plaintiff, Kim Carlson Lewis and Claims for Punitive Damages Under State Law" filed by Defendants in this matter.

## I.     Legal Standard.

Pursuant to Federal Rule of Civil Procedure 12, a defendant may move the Court to dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. Proc. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Johnson v. Harris County*, 83 F.4th 941, 945 (5th Cir. 2023) (citations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

3

The standard for the adequacy of pleadings seeking to state a claim for relief is governed by Rule 8(a), which requires that a pleading contain a short plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement for relief—including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In evaluating the sufficiency of a complaint, Courts must accept all factual allegations as true, but Courts do not need to accept "conclusory allegations, unwarranted factual inferences, or legal conclusions" as facts. *See Alvarado v. CITGO Petro. Corp.*, No. 25-40455, 2026 U.S. App. LEXIS 6463, at *3 (5th Cir. Mar. 4, 2026) (internal quotations omitted). Naked assertions devoid of further factual enhancement do not survive a motion to dismiss. *Johnson*, 83 F.4th at 945 (citations omitted).

## II.    Plaintiffs failed to sufficiently plead a plausible claim under 42 U.S.C. § 1983.

### A.    Plaintiffs' official capacity claims should be dismissed as duplicative.

Plaintiffs allege they are suing the Supervisor Defendants in their official capacity as officials of the LaSalle-branded entities—LaSalle Correctional Center, L.L.C., LaSalle Management Company, L.L.C., and LaSalle Corrections, LLC.[22] The only official capacity claims in Plaintiffs' complaint are set forth in Cause of Action I, which alleges *Monell* liability against the LaSalle-branded entities and the individual defendants in their official capacity.[23] Because Plaintiffs have sued both the LaSalle-branded entities and Supervisor Defendants in their official

---

[22] Doc. 1, pp. 6-7.
[23] *Id.* at p. 23.

capacities, the official capacity claims against the Supervisor Defendants should be dismissed as duplicative.

It is well settled in § 1983 jurisprudence that an official capacity claim serves only as a way of pleading against the entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. When a plaintiff brings a *Monell* liability claim against an entity and an official capacity claim against that entity's official, the two claims "essentially merge," and the official capacity claim may be dismissed as duplicative. *Roe v. Johnson Cnty., Tex.*, 3:18-2497, 2019 WL 5031357 at *15 (N.D. Tex. July 29, 2019) (citations omitted). Accordingly, Plaintiffs' official capacity claims against Supervisor Defendants should be dismissed with prejudice.

### B.    Plaintiffs failed to support their individual capacity claims with sufficient factual allegations.

The only individual capacity claims brought against the Supervisor Defendants are set forth in Plaintiffs' Cause of Action II.[24] Those claims should be dismissed because Plaintiffs fail to plead sufficient factual allegations to support a plausible claim for supervisor liability against any of the Supervisor Defendants.

Under § 1983, a supervisory official may only be held liable if the official either (1) affirmatively participated in the acts that caused constitutional deprivation or (2) implemented unconstitutional policies that causally resulted in the constitutional injury. *Guidry v. La. Dep't of Pub. Safety*, No. 24-30754, 2026 U.S. App. LEXIS 7242, at *8 (5th Cir. Mar. 11, 2026); *Lentworth v. Potter*, 255 F. App'x 903, 905 (5th Cir. 2007). A "broad and conclusory allegation" that Supervisor Defendants "acted as policy maker[s] within ["LaSalle"] is insufficient to state a claim

---

[24] Doc. 1, p. 24.

that [Supervisor Defendants] affirmatively participated in conduct causing a constitutional violation or that [Supervisor Defendants] implemented a policy that caused any violation." *Jones v. Lumpkin*, No. 23-40612, 2024 U.S. App. LEXIS 11015, at *2 (5th Cir. May 6, 2024).

       1.      <u>Plaintiffs failed to sufficiently plead facts establishing an unconstitutional policy or pattern of conduct.</u>

Plaintiffs allege that Mr. Carlson's constitutional right to adequate medical care was violated while he was detained at the Olla facility.[25] Plaintiffs do not allege that the Supervisor Defendants affirmatively participated in the alleged constitutional violation. Thus, Plaintiffs were required to sufficiently plead an unconstitutional policy or custom that would support a claim for supervisor liability, but they failed to do so.

Plaintiffs make conclusory allegations that "LaSalle" has an unconstitutional policy of providing inadequate medical care.[26] Plaintiffs' base that conclusion on a list of twelve "examples" of alleged constitutional violations committed by the "corporate and municipal defendants."[27] However, to sufficiently plead a custom of unconstitutional conduct, a plaintiff must successfully point to "similar incidents that are 'sufficiently numerous' and have 'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Martinez v. Nueces Cty.*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009).

Plaintiffs' examples are neither similar to the facts alleged in this matter nor sufficiently numerous to warrant finding an unconstitutional custom. To start, none of the examples are alleged to have occurred at LaSalle Correctional Center in Olla, Louisiana—the subject facility in this

---

[25] Doc. 1, p. 24.
[26] *Id.* at pp. 13-20.
[27] *Id.* at pp. 15-20.

lawsuit.[28] While the purported examples alleged by Plaintiffs may be related to medical treatment at other facilities, none of the examples provided are similar to the facts alleged in Plaintiffs' Complaint, i.e., that Mr. Carlson submitted two sick call requests before being seen by a nurse, at which point he was immediately transferred to the hospital. [29] Furthermore, allegations of wrongdoing at "jails and other institutions across the country" are insufficient to plead an unconstitutional custom at the Olla facility. *See Martinez*, 71 F.4th at 391-92.

Moreover, Plaintiffs "examples" are not sufficiently numerous. Plaintiffs only allege dates for seven of their twelve examples.[30] Those examples are alleged to have occurred across a seven year span between 2013 and 2019.[31] An allegation of one incident per year is insufficient to establish a pattern capable of constituting a policy. *See Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016) (holding that twenty-one previous incidents over nineteen years, without further context, is insufficient to represent a custom). Without a sufficiently alleged pattern of unconstitutional violations, "supervisory liability claims fail as a matter of law." *Fletcher v. Whittington*, No. 18-1153, 2022 U.S. Dist. LEXIS 151493, at *25 (W.D. La. Aug. 23, 2022).

Finally, the only actual policy alleged in Plaintiffs' Complaint is that "LaSalle" had a "sick call policy" at the time of Mr. Carlson's death that required inmates to pay five dollars per "sick call service or physician's visit" and only provided the opportunity for an inmate to see onsite medical providers on Wednesday and Thursday.[32] However, Plaintiffs make no allegation that this policy is unconstitutional on its face.[33] Furthermore, the factual allegations in Plaintiffs' Complaint

---

[28] Doc. 1, pp. 15-20.
[29] *Id.* at pp. 10-11.
[30] *Id.* at pp. 15-20.
[31] *Id.*
[32] *Id.* at p. 9.
[33] *See* Doc. 1.

contradict any claim that care was unavailable on days other than Wednesday or Thursday, as Mr. Carlson was alleged to have been seen by a medical provider on Friday, January 24, 2025, and was immediately referred for further evaluation and care outside the facility on that date.[34] Plaintiffs failed to sufficiently plead an unconstitutional custom or policy. Accordingly, Plaintiffs' claims for supervisor liability against Supervisor Defendants have no basis.

2.     <u>Plaintiffs failed to sufficiently plead that the Supervisor Defendants were deliberately indifferent in maintaining an alleged unconstitutional policy or custom.</u>

In order to "establish supervisor liability for constitutional violations committed by subordinate employees, a plaintiff must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Jones*, 2024 U.S. App. LEXIS 11015, at *1-2 (citing *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)).

"Deliberate indifference is an extremely high standard to meet." *Guidry*, 2026 U.S. App. LEXIS 7242, at *10. A prison official is deliberately indifferent if he knows of an excessive risk to inmate health or safety and disregards that risk. *Id.* This knowledge requirement is subjective: the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* (citing *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008)).

Plaintiffs allege that William and Clay McConnell have "ultimate control over and policymaking authority" of "LaSalle's policies and practices," but Plaintiffs do not support that conclusory allegation with any facts.[35] Plaintiffs' also allege that William and Clay McConnell "turned a blind eye to, were indifferent, and tacitly encouraged" a policy of providing inadequate

---

[34] Doc. 1, p. 12.
[35] *Id.* at p. 7.

8

medical care but likewise provide no factual support for that conclusion. Furthermore, Plaintiffs allege Warden Stuckey and Dr. Hearn were "aware of these policies and practices" but "failed to take reasonable steps to stop them."[36] Plaintiffs' unsupported and conclusory allegations are insufficient to establish that the Supervisor Defendants were aware of an excessive risk to Mr. Carlson's, or any inmate's, health. Thus, Plaintiffs cannot show that Supervisor Defendants maintained an unconstitutional policy or custom with deliberate indifference.

Plaintiffs do not allege the personal involvement of the Supervisor Defendants in either this incident or any of the other alleged "examples" of unconstitutional conduct. Plaintiffs' Complaint "invites no more than speculation that any particular policymaker" knew about the alleged custom. *See Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018). Accordingly, Plaintiffs failed to sufficiently plead the requisite deliberate indifference of Supervisor Defendants to establish supervisor liability.

3.     Plaintiffs failed to sufficiently plead an underlying constitutional violation.

To establish supervisor liability under § 1983, Plaintiffs needed to sufficiently plead an underlying constitutional violation. *Bell v. State Prison Offs.*, No. 23-30339, 2024 U.S. App. LEXIS 13817, at *13 (5th Cir. June 6, 2024). "Without a showing that a subordinate employee refused to treat [Mr. Carlson], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs, there is no predicate constitutional violation upon which to base [the Supervisor Defendants'] supervisory liability." *Estate of Henson v. Callahan*, 440 F. App'x 352, 358 (5th Cir. 2011) (internal quotations omitted).

---

[36] Doc. 1, p. 15.

Plaintiffs allege that at the time Mr. Carlson was seen by the facility's onsite nurse on January 24, 2025, he had been ill for "a little over week, and his throat had been swelling for days."[37] However, Plaintiffs also allege that Mr. Carlson arrived at the Olla facility on January 17, 2025, exactly one week before he saw the facility nurse,[38] and he is alleged to have submitted his first sick call request on the evening of January 21, 2025.[39] Assuming Plaintiffs' allegations are true, Mr. Carlson was not seen by the facility nurse until he submitted his second sick call request on January 24, 2025.[40] In the meantime, Plaintiffs allege unidentified "cellmates" reported "Mr. Carlson's condition" to unnamed medical staff every day, but were only referred to treatment options available in the commissary.[41]

Plaintiffs allege that these actions amount to deliberate indifference on the part of the Olla facility employees.[42] However, Plaintiffs' allegations, even if taken as true, are insufficient to support a claim for deliberate indifference. Again, "[d]eliberate indifference is an extremely high standard to meet." *Guidry*, 2026 U.S. App. LEXIS 7242, at \*10. "[F]ailure to alleviate a significant risk that [the official] should have perceived, but did not [is] insufficient to state a claim for deliberate indifference." *Williams v. Webre*, No. 24-847, 2024 U.S. Dist. LEXIS 136163, at \*8 (E.D. La. Aug. 1, 2024) (quotations omitted). Even if Plaintiffs were to prove the truth of their factual allegations, "mere negligence, neglect or medical malpractice" does not give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Plaintiffs' allegations do not "clearly evince a wanton disregard for any serious medical needs," and therefore,

---

[37] Doc. 1, p. 12.
[38] *Id.* at p. 9.
[39] *Id.* at p. 10.
[40] *Id.* at p. 11.
[41] *Id.* at p. 10.
[42] *Id.* at pp. 25-26.

Plaintiffs cannot show the required presence of a predicate constitutional violation upon which to base supervisor liability. *See Estate of Henson*, 440 F. App'x at 358.

> 4. Plaintiffs failed to sufficiently plead facts to show any alleged policy or custom was the cause of the alleged constitutional violation.

"[A] plaintiff may only prove supervisory liability for a non-personally involved defendant by showing that there is a sufficient causal connection between the supervisor's conduct and the constitutional violation." *Guidry*, 2026 U.S. App. LEXIS 7242, at *8 (internal quotations omitted). In order to sufficiently plead the causation element, Plaintiffs needed to plead facts that show the misconduct of the subordinate was affirmatively linked to the action or inaction of the Supervisor Defendants. *Guidry*, 2026 U.S. App. LEXIS 7242, at *9 (citing *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 550 (5th Cir. 1997)).

Plaintiffs fail to plead any supporting factual allegations that would show any specific actions or inactions by the Supervisor Defendants that caused the alleged constitutional violation. Plaintiffs allege that the "foregoing policies caused Mr. Carlson's suffering and death."[43] As outlined in Sections II(B) (1-2), *supra*, Plaintiffs failed to plead sufficient factual allegations to show a custom of providing inadequate medical care existed at the Olla facility that was maintained with deliberate indifference by the Supervisor Defendants. Furthermore, the only policy identified in Plaintiffs' Complaint is the alleged sick call policy that required inmates to pay five dollars per visit and limited medical provider visits to Wednesdays and Thursdays.[44] Plaintiffs do not allege the charge associated with medical visits prohibited Mr. Carlson from seeking treatment. Further, Plaintiffs allege that Mr. Carlson was seen by the facility nurse on a Friday, immediately after submitting a sick call request.[45] Plaintiffs' conclusory claim that an alleged policy or custom

---

[43] Doc. 1, p. 24.
[44] *Id.* at p. 9.
[45] *Id.* at p. 11.

11

caused Mr. Carlson's constitutional violation is "based purely on speculation" and fails to state a plausible claim for supervisor liability. *Martinez v. Harris County*, No. 24-20194, 2025 U.S. App. LEXIS 7023, at *19 (5th Cir. Mar. 26, 2025).

5.      Plaintiffs failed to sufficiently plead a claim for failure to train.

Plaintiffs' Complaint includes passing references to alleged "untrained" and "under-trained" guards and healthcare employees working at the Olla facility.[46] However, Plaintiffs have not specifically set forth a "failure to train" claim in their causes of action.[47] To the extent Plaintiffs are asserting a claim for failure to train, that claim should be dismissed as insufficiently pled.

A supervisor may be liable for failure to supervise or train if: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of constitutional rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Zavala v. City of Baton Rouge*, No. 17-656-JWD-EWD, 2018 U.S. Dist. LEXIS 160602, at *32-33 (M.D. La. Sep. 20, 2018). To successfully plead a claim for failure to train, Plaintiffs must plead a pattern of similar constitutional violations by untrained employees. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted). "Even within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish." *Anderson v. Marshall Cty.*, 637 F. App'x 127, 134 (5th Cir. 2016).

Plaintiffs do not plead that any of the individual defendants identified in the Complaint—either named or unnamed—were untrained or under-trained. Further, Plaintiffs do not plead how any alleged constitutional violation was "causally linked" to a specific Supervisor Defendants' "deliberate indifference" in failing to train a subordinate official. Plaintiffs' conclusory allegations that the correctional and healthcare staff at the Olla facility were either "untrained" or "under-

---

[46] *E.g.,* Doc. 1, p. 20.
[47] *See id.* at pp. 23-26.

12

trained," without any specific supporting factual allegations, are insufficient to state a plausible claim for failure to train.

### 6. Plaintiffs' practice of group pleading claims against the Supervisor Defendants cannot support a plausible claim for § 1983 liability.

Plaintiffs allegations are made collectively against a group of defendants and are insufficient to support a claim against any specific individual defendant. Group pleading claims may be dismissed as insufficiently pled because § 1983 actions require individual allegations against each separate defendant to establish liability. *See Armstrong v. Ashley*, 60 F.4th 262, 274–75 (5th Cir. 2023). A "theory of collective responsibility" cannot withstand a motion to dismiss. *Martinez v. City of N. Richland Hills,* 846 F. App'x 238, 243 (5th Cir. 2021) (citation omitted).

Plaintiffs categorize William McConnell, Clay McConnell, John Stuckey, and Pamela Hearn, M.D. as "Supervisor Defendants" and then make collective allegations against them without connecting any specific alleged act or omission to any specific individual defendant.[48] Plaintiffs' conclusory allegations of group liability are insufficient to survive a motion to dismiss. *See Armstrong*, 60 F.4th at 275. A "confusing web of alleged liability and scattershot allegations" is insufficient to support Plaintiffs' § 1983 claims against the Supervisor Defendants. *See Abraugh v. Altimus*, 20-252, 2023 U.S. Dist. LEXIS 163953, at *18 (W.D. La. Sep. 14, 2023).

### 7. Defendants cannot be held vicariously liable under 42 U.S.C. § 1983.

Plaintiffs' Complaint alleges that Supervisor Defendants "are supervisors of one or more persons who violated Mr. Carlson's rights."[49] However, "an official cannot be held vicariously liable for the conduct of those under his supervision." *Fletcher v. Whittington*, No. 18-1153, 2022 U.S. Dist. LEXIS 149366, at *13 (W.D. La. Aug. 19, 2022) (citing *Alderson v. Concordia Par.*

---

[48] Doc. 1, pp. 24-25.
[49] *Id.* at p. 24.

*Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017). As a result, Plaintiffs' claims seeking to hold Supervisor Defendants vicariously liable for the alleged acts of their subordinates should be dismissed.

Ultimately, Plaintiffs merely conclude that Supervisor Defendants are liable in their individual capacities under § 1983 without properly pleading facts in support of that contention. "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Damond v. City of Rayville*, 127 F. 4th 935, 938 (5th Cir. 2025) (internal quotations omitted).

### III.    Plaintiffs failed to state a plausible claim under state law.

Plaintiffs' conclusory allegation that Mr. Carlson "died by the fault of the defendants"[50] is insufficient to support a state law claim against Defendants. "[G]eneral allegations against all defendants for their negligence are too conclusory to make out a clear claim against any one defendant." *Smith v. Prator*, 21-0620, 2022 U.S. Dist. LEXIS 179384, at *13 (W.D. La. Sep. 30, 2022). In § 1983 cases where inadequate medical care is alleged under both federal and state law, Louisiana federal district courts apply Louisiana Civil Code article 2315 and the duty-risk analysis in determining whether to impose tort liability on defendants. *See e.g., Fletcher*, 2022 U.S. Dist. LEXIS 151493, at *31. Under that analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's

---

[50] Doc. 1, p. 26.

14

injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). *Roberts v. Benoit*, 605 So. 2d 1032, 1051 (La. 1992).

Plaintiffs' sparse allegations against the Supervisor Defendants do not suffice to raise their right to relief under state law above a speculative level. "Like the Section 1983 claims, the negligence claims require pleading with particularity as to the negligent acts of each specific defendant." *Smith*, 2022 U.S. Dist. LEXIS 179384, at *13. Plaintiffs do not allege any specific acts committed by the Supervisor Defendants in the events preceding Mr. Carlson's death.[51] Plaintiffs do not allege with particularity any specific duty, facts showing a breach of duty, or how a breach of duty was the cause-in-fact of their claimed injuries.[52] Plaintiffs do not allege that the Supervisor Defendants are employers of any individual who would be allegedly liable under state law. *See Fletcher*, 2022 U.S. Dist. LEXIS 151493, at *33 (recognizing that employers, not supervisors, may be held vicariously liable). Accordingly, Plaintiffs' state law claims are insufficiently pled and should be dismissed.

## IV.   Plaintiffs failed to plead sufficient facts to show William McConnell and Clay McConnell are personally liable.

As set forth in Section II & III, *supra*, Plaintiffs failed to sufficiently plead a plausible claim against William or Clay McConnell under federal or state law. Even assuming, *arguendo*, that Plaintiffs did sufficiently plead a plausible claim, Plaintiffs still failed to plead sufficient factual allegations that would show any exception would apply to the liability shield provided to William and Clay McConnell as the alleged owners of the LaSalle-branded entities.

Louisiana law applies when determining whether a member of a Louisiana limited liability company may be held personally liable for claims brought against that company in federal court,

---

[51] *See* Doc. 1.
[52] *Id.*

including for claims brought pursuant to federal law. *See e.g., Hollowell v. Orleans Regional Hosp. LLC*, 217 F.3d 379, 385 (5th Cir. 2000) (applying Louisiana corporate "veil-piercing" law to federal WARN Act claims brought against a limited liability company); *see also Soriano v. Gulf Coast Lift, LLC*, No. 12-2744, 2014 U.S. Dist. LEXIS 31338 at *21-23 (E.D. La. Mar. 11, 2014) (reasoning that Louisiana law governs a federal court's decision of whether to pierce the corporate veil of a Louisiana limited liability company).

The liability of members, managers, employees, or agents of limited liability companies in Louisiana is "determined solely and exclusively" by Title 12, Chapter 22 of the Louisiana Revised Statutes. La. Stat. Ann. §12:1320(A). Chapter 22 provides in part that:

> B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.
>
> C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.

Plaintiffs allege that William McConnell and Clay McConnell "are the owners of LaSalle and additional corporate entities affiliated with LaSalle."[53] The owners of limited liability companies are its "members." *See* La. Stat. Ann. § 12:1301(A) (13, 14). As alleged members, William and Clay McConnell are not liable for any "debt, obligations, or liability" of the limited liability company defendants. *See* La. Stat. Ann. § 12:1320(B). Moreover, as alleged members, William and Clay McConnell are not proper parties to this lawsuit. *See* La. Stat. Ann. § 12:1320(C).

---

[53] Doc. 1, p. 7.

16

There exist a few narrow exceptions to the limitation of liability provided to members of limited liability companies; however, none of those exceptions apply here. The statute provides that:

> D. Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

La. Stat. Ann. § 12:1320(D). In interpreting these exceptions to a member's statutory limitation of liability, the Louisiana Supreme Court has held that a plaintiff must show two separate components to qualify for an exception. *Ogea v. Merritt*, 130 So. 3d 888, 897 (La. 2013). First, the plaintiff must show that he has a cause of action against the member. *Id.* Second, the plaintiff must show that the cause of action against the member "arises from 'any fraud practiced upon [Plaintiffs] or 'any breach of professional duty or other negligent or wrongful act.'" *Id.* (citing La. Stat. Ann. § 12:1320(D)). The Court has held that the second component is "integral" to finding an exception to a member's limitation of liability and confines any exceptions to "certain circumscribed subjects of law, such as fraud." *Id.*

Plaintiffs have not pled that William and Clay McConnell have committed fraud or breached a professional duty.[54] In analyzing whether to pierce the liability shield for a member's alleged "negligent or wrongful act," the Louisiana Supreme Court has held that courts should apply a four-factor test: (1) Whether a member's conduct could be fairly characterized as a traditionally recognized tort; (2) whether a member's conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, could be held culpable; (3) whether the conduct at issue

---

[54] *See* Doc. 1.

17

was required by, or was in furtherance of, a contract between the claimant and the LLC; and (4) whether the conduct at issue was done outside the member's capacity as a member. *Nunez v. Pinnacle Homes, L.L.C.,* 180 So. 3d 285, 292-93 (citing *Ogea,* 130 So. 3d at 901-01).

Plaintiffs failed to sufficiently allege that William and Clay McConnell committed a tort.[55] Plaintiffs did not allege that William and Clay McConnell committed a crime. Plaintiffs did not allege that William and Clay McConnell were acting outside their capacities as owners. On balance, the four-factor test to determine whether the alleged conduct constitutes a "negligent or wrongful act" weighs against finding personal liability.

Plaintiffs do not make sufficient factual allegations against William and Clay McConnell that would warrant piercing the corporate veil. Plaintiffs' Complaint contains only conclusory allegations that William and Clay McConnell have policymaking authority for "LaSalle's" policies and practices,[56] and that they "tacitly encouraged those policies and practices,"[57] but these hollow, unsupported allegations are insufficient to establish an exception to the personal liability shield. Under La. Stat. Ann. § 12:1320, William and Clay McConnell are immune to liability for the claims made against the companies they are alleged to own. Because Plaintiffs have not sufficiently pled any specific factual allegations that would show an exception to that immunity exists, Plaintiffs' claims that are brought directly against William and Clay McConnell should be dismissed.

## V.    **Plaintiffs' state law claims against Dr. Pamela Hearn are premature.**

As stated above, Plaintiffs assert both § 1983 claims and state law claims against Dr. Hearn.[58] Plaintiffs do not allege that Dr. Hearn, as a medical provider, personally treated Erik

---

[55] *See* Section III, *supra*.
[56] Doc. 1, p. 7.
[57] *Id.* at p. 21.
[58] *Id.* at p. 25.

18

Carlson at any point prior to his death.[59] However, Plaintiffs do allege that Dr. Hearn is liable under state law and that "All Defendants" are liable for Mr. Carlson's wrongful death.[60] Plaintiffs' state law claims against Dr. Hearn, sound in medical malpractice and should be dismissed as premature.

In § 1983 actions for inadequate medical care in which plaintiffs also assert state law claims, federal district courts in Louisiana apply the Louisiana Medical Malpractice Act ("LMMA") to claims brought against qualified healthcare providers that sound in medical malpractice. *E.g., Thomas v. Wright*, No. 23-1614, 2025 LX 164561 (W.D. La. Mar. 27, 2025); *Williams v. Webre*, No. 24-847, 2024 U.S. Dist. LEXIS 141706 (E.D. La. Aug. 9, 2024). Under the LMMA, "medical malpractice claims against qualified healthcare providers must first be submitted to a medical review panel before a court can exercise jurisdiction over them." *Thomas*, 2025 U.S. Dist. LEXIS 58003, at *9 (citing La. R.S. 40:1231.1, *et seq.*). This Court, in *Thomas v. Wright*, dismissed a plaintiff's claims as premature because the plaintiff had not satisfied the LMMA prerequisite of submitting those claims to a medical review panel. *Id.* at *10. Similar to Plaintiffs here, the plaintiff in *Thomas* claimed that the qualified healthcare provider failed to adequately supervise and train nursing staff, failed to implement proper policies, and failed to provide appropriate medical care. *Id.*

Defendants contend that Dr. Pamela Hearn is a qualified healthcare provider under the LMMA, both now and at the time of Mr. Carlson's death. This contention is sufficient to establish Dr. Hearn's status as a qualified healthcare provider for purposes of a motion to dismiss. *See id.* (finding a doctor's contention that he is a qualified healthcare provider was sufficient to warrant

---

[59] Regardless of whether Dr. Hearn ever treated Mr. Carlson, the following analysis applies. *See e.g., Williams v. Webre*, No. 24-847, 2024 LX 111987, at *1-2 (E.D. La. Aug. 1, 2024) (concerning medical malpractice claims brought against defendants, including supervisors, in a § 1983 action).

[60] Doc. 1, pp. 25-26.

19

dismissal of malpractice claims if Plaintiffs do not dispute that assertion). Plaintiffs have no basis to dispute Dr. Hearn's status as a qualified healthcare provider under the LMMA.[61] Furthermore, Plaintiffs have not alleged that they submitted any of the claims contained in their Complaint to a medical review panel.[62] Accordingly, any claims Plaintiffs assert against Dr. Hearn for failing to implement proper policies,[63] failing to supervise and train nursing staff,[64] failing to provide adequate medical care,[65] and state law negligence, medical malpractice, and wrongful death[66] should be dismissed as premature pending the outcome of a medical review panel as required by the LMMA. *See id.*; La. R.S. 40:1231.1, *et seq.*

## CONCLUSION

For the reasons set forth above, Defendants respectfully move the Court to enter an order dismissing all claims by Plaintiffs, Kim Carlson Lewis, as Personal Representative of Erik Carlson, deceased, and on her own behalf, and Lindsey Gratehouse, on behalf of her minor child M.G., with prejudice.

[*signature on next page*]

---

[61] Certificates of Enrollment in the Patient's Compensation Fund may be accessed at the following website: https://webcertificates.lapcf.info/Certificates.aspx
[62] *See* Doc. 1.
[63] *Id.* at pp. 13, 15, 24-25.
[64] *Id.* at p. 14, 24-25.
[65] *Id.* at p. 13.
[66] *Id.* at p. 26.

20

Respectfully submitted,

*/s/ Ryan G. Lavelle*
Deirdre C. McGlinchey, T.A. (24167)
dmcglinchey@joneswalker.com
T. Gregory Schafer (24635)
gschafer@joneswalker.com
Ryan G. Lavelle (41305)
rlavelle@joneswalker.com
JONES WALKER LLP
201 St. Charles Ave.
New Orleans, Louisiana 70170
Telephone: (504) 582-8000
Facsimile: (504) 582-8583
*ATTORNEYS FOR WILLIAM McCONNELL,*
*CLAY McCONNELL, JOHN STUCKEY, and*
*PAMELA HEARN, M.D.*

## CERTIFICATE OF SERVICE

I certify that on April 16, 2026, a copy of this pleading was filed electronically with the Clerk of Court using the CM/ECF system which will send notification to all counsel of record.

*/s/ Ryan G. Lavelle*
RYAN G. LAVELLE

21